IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TODD P. AVERYHART, | ) CASE NO. 1:16-CV-2071 |
| Plaintiff, | ) JUDGE DONALD C. NUGENT |
| vs. | ) |
| CITY OF SHAKER HEIGHTS, et al., | ) MEMORANDUM OPINION |
| Defendants. | ) |

This matter is before the Court upon Cross-Motions for Summary Judgment. Defendants, City of Shaker Heights, Patrolman Andrew Chenevey, Patrolman Steven Yung, Patrolman Kevin Ishler, and Patrolman Ante Cacic (hereafter referred to as "Officers"), filed a Motion for Summary Judgment on March 2, 2017 (ECF #25). Plaintiff, Todd P. Averyhart (hereafter "Mr. Averyhart"), timely filed a Brief in Opposition (ECF #41) and a Reply Brief was timely filed on behalf of all Defendants (ECF #29).[1]

Mr. Averyhart filed a Motion for Partial Summary Judgment on June 17, 2017 (ECF #42), and Defendants timely filed a Brief in Opposition (ECF #44). Therefore, this matter is fully briefed and ripe for review.

For the reasons set forth herein, Defendants' Motion for Summary Judgment (ECF #25) is GRANTED.

---

[1] Mr. Averyhart filed a second Brief in Opposition on June 15, 2017 (ECF #41) and Defendants filed a Supplemental Reply Brief in Support of Defendants' Motion for Summary Judgment (ECF #43) as per this Court's Order dated May 2, 2017 (ECF #33).

I. FACTUAL BACKGROUND[2]

The facts of this matter are largely undisputed, and are set forth below.

On October 29, 2015, at approximately 6:45 p.m., a Shaker Heights police dispatch employee issued a radio call indicating that a resident of 3723 Lindholm Road, Ms. Cammons, reported that her kitchen window had been "shot out."[3] Dispatch further reported that Ms. Cammons "described it as hearing a shot." (IA Report, Page ID #30). In response to the radio call, Patrolmen Chenevey, Ishler and Cacic reported to Ms. Cammons' home at 6:56 p.m., approximately two minutes later.

At that time, Mr. Averyhart was standing in the driveway of his home, which is located next to Ms. Cammons' house on Lindholm Road. The area in which Mr. Averyhart was standing was described as "extremely dark" at the time Officers arrived. (IA Report, PageID #35). When the Officers noticed Mr. Averyhart, they drew their firearms and asked him to show his hands, turn around, get down on his knees, lay face down and put his hands out. Officer Chenevey then handcuffed Mr. Averyhart and patted him down for weapons. At 6:57 p.m., Office Ishler asked Mr. Averyhart where he lived and if anyone else was in the vicinity. Mr. Averyhart indicated that he lived "right here." (IA Report, PageID #33). At 6:58 p.m., Officer Cheveney assisted Mr. Averyhart back to his knees and asked Mr. Averyhart if he had identification. Mr. Averyhart replied that his license was in his pants pocket. Officer Chenevey retrieved the license and told

---

[2] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in a light most favorable to the non-moving party.

[3] See ECF #1-1, PageID #30 (Shaker Heights Police Department's Informal Internal Affairs Investigation Report Q-2015-009, including transcript taken from the body camera worn by Officer Cheveney during the incident), hereafter referred to as "IA Report PageID #__."

Mr. Averyhart that the police were called because "someone called in hearing a gunshot." (IA Report, PageID #33).

At approximately 7:02 p.m., Officers Ishler and Cacic instructed Officer Chenevey by radio to release Mr. Averyhart because it was determined that a rock had broken Ms. Cammons' window. Officer Chenevey helped Mr. Averyhart to his feet, removed the handcuffs, and thanked him for his cooperation. At no time was Mr. Averyhart placed under arrest, and the entire encounter lasted approximately eight minutes. (See IA Report, PageID #35).

On October 31, 2015, Mr. Averyhart filed a Confidential Complaint Form with the Shaker Heights Police Department. (See IA Report, PageID #38). An internal investigation was conducted and a Memorandum was issued by Commander John Cole of the Internal Affairs Office. (See IA Report, PageID #30). Commander Cole reviewed the reports of all parties involved in the incident, and reviewed the Officers' body camera footage with Mr. Averyhart. Commander Cole concluded that the Officers at the scene "did NOT violate any rules or regulations of the Shaker Heights Police Department during the encounter." (IA Report, PageID #36).

On December 6, 2016, Mr. Averyhart filed an Amended Complaint in this Court against the City of Shaker Heights and the four Officers he claims were involved with the incident.[4] Mr. Averyhart alleges five claims under 42 U.S.C. § 1983: Count I alleges unreasonable search and seizure under the Fourth Amendment; Count II alleges excessive force under the Fourth and Fourteenth Amendments; Count III alleges false arrest, false detention and false imprisonment

---

[4] Officer Yung has indicated that he was not involved in the incident with Mr. Averyhart. (See ECF #18-3, Affidavit of Officer Yung).

under the Fourth Amendment; Count IV alleges municipal liability against the City of Shaker Heights for failure to train the Officers and for ratifying their acts; and, Count V alleges that Officers failed to intervene during the encounter. The remaining three Counts contain state law claims of assault and battery, false arrest/wrongful detention, and intentional infliction of emotional distress. Specifically, Mr. Averyhart alleges that he was diagnosed with anxiety disorder and Posttraumatic Stress Disorder as a result of the incident. (See ECF #42-6, PageID #761).

II. LEGAL ANALYSIS

A. Summary Judgment Standard

The summary judgment standard is well-settled. Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.C. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant,

probative evidence indicating the necessity of a trial for resolving a material factual dispute. (*Id*. at 322). A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.,* 244 F.3d 797, 800 (6th Cir.2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248–49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. (*Id*.) Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. (*Id*.) A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *(Id*. at 248–52).

    B.  <u>Section 1983 Claims Against the Officers - Counts I-III and Count V</u>

42 U.S.C. Section 1983 provides a right of action against every "person who, under color of [law]...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To prevail on a Section 1983 claim, a plaintiff must (1) prove the violation of a right secured by the Constitution

or laws of the United States, and (2) show that the deprivation of that right was committed by a person acting under color of state law. *Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). It is not disputed that the Officers in this case were acting under color of state law during the incident.

Mr. Averyhart alleges in Counts I-III that the Officers subjected him to an unreasonable search and seizure and used excessive force during the incident of October 29, 2015, which amounted to false arrest or imprisonment. These claims are evaluated under the Fourth Amendment's "reasonableness" standard, and will therefore, be addressed together.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The United States Supreme Court has held that an officer may conduct an investigatory stop without the probable cause needed for an arrest where the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing might be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In addition, an investigatory stop, or *Terry* stop, is not unreasonable if the detention lasts no longer than necessary to effectuate the purpose of the seizure. *United States v. Perez,* 440 F.3d 363, 369-70 (6th Cir. 2006).

Similarly, all claims that law enforcement have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In evaluating an excessive force claim, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396, 109 S.Ct. at 1865. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–37, 109 S.Ct. at 1865. As such, the reasonableness standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2002).

Finally, in order for a Plaintiff to prevail on a claim of false arrest, imprisonment or detention in violation of the Fourth Amendment under 42 U.S.C. §1983, the Plaintiff must prove that the Officers lacked probable cause. *Keyes v. Ervin*, 92 Fed.Appx. 232, (6th Cir. 2004). Probable cause requires only the probability of criminal activity, not some type of prima facie showing. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003)(citations omitted). The probability of criminal activity is assessed under a reasonableness standard based upon "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Id*.

The factual evidence in this case does not support a finding that the Officers conducted an unreasonable search or seizure of Mr. Averyhart, used excessive force during the stop or lacked probable cause to detain him. The Officers arrived at the scene, which was described as extremely dark, believing a gun was used to shoot out a nearby window minutes earlier. The Officers saw Mr. Averyhart standing within several feet of the alleged crime scene. Therefore, it was reasonable for the Officers to draw their weapons and then detain, handcuff and question Mr.

Averyhart, and reasonable for the Officers to believe Mr. Averyhart could have been armed and involved in the shooting. (*See, e.g., U.S. v. Caruthers*, 458 F.3d 459 (6th Cir. 2006)(officer acted reasonably during weapons-related stop when he secured suspect by pointing gun toward him); *Bennett v. City of Eastpointe*, 410 F.3d 810 (6th Cir. 2005)(use of handcuffs during *Terry* stop requires reasonable belief that suspect could be armed and dangerous).[5]

Once it was determined that a rock broke Mr. Cammons' window, the Officers assisted Mr. Averyhart to his feet and removed the handcuffs. Officer Chenevey then explained to Mr. Averyhart that he was stopped because he was in the vicinity of a "gun call," but that he was now free to leave. (See ECF #18-1, p. 5). The Officers had probable cause to detain Mr. Averyhart in order to secure a crime scene where it was believed a gun was used. There is no evidence to support the claims that excessive force or false imprisonment or arrest occurred during this incident. *See, e.g., Houston v. Doe*, 174 F.3d 809, 814 (6th Cir. 1999)(officers' investigatory stop reasonable when suspect handcuffed and detained in response to reported shooting). Therefore, the Defendant-Officers are entitled to judgment as a matter of law regarding Counts I-III.

In Count V, Mr. Averyhart alleges that some of the Officers failed to intervene during the incident. It has been established in this Circuit that "[a]s a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Furthermore, an officer may only be held liable under a theory of failure to intervene where he both: (1) observed or had reason to know that excessive force would be or was being

---

[5] Mr. Averyhart's allegation that Officer Chenevey performed an illegal search by removing a driver's license from his pocket is not supported by the evidence, including Mr. Averyhart's deposition testimony that he was "perfectly fine" with Officer Chenevey's actions in obtaining the identification. (See ECF #44, p. 6).

used; and (2) had both the opportunity and the means to prevent the harm from occurring. *Amerson v. Waterford Township*, 562 Fed.Appx. 484, 489 (6th Cir. 2014)(*citing Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997).

Mr. Averyhart's failure to intervene claim fails both procedurally and substantively. First, Mr. Averyhart does not identify which Officer had any duty to intervene during the incident.[6] Therefore, Mr. Averyhart cannot begin to argue whether any such Officer had the opportunity or means to intervene. More importantly, this Court has already established that no Officer used excessive force during the incident, therefore, no Officer at the scene had an obligation to intervene. For these reasons, the Defendants are entitled to judgment as a matter of law regarding Count V.

C. Section 1983 Claim Against the City of Shaker Heights - Count IV

Mr. Averyhart seeks to hold the City of Shaker Heights liable for its alleged failure to adequately train the Officers and for its alleged ratification of their conduct through its investigation.

Mr. Averyhart cannot base his claim against the City of Shaker Heights solely on the Officers' conduct, as *respondeat superior* is not available as a theory of recovery under Section 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a Plaintiff seeking to hold a municipality liable for its officers' conduct must demonstrate "(1) that a constitutional violation occurred; and (2) that the [municipality] is responsible for that violation." *Lopez v. City of Cleveland*, 625 Fed.Appx. 742, 747 (6th Cir. 2015)(*citing Graham v.*

---

[6] In fact, Mr. Averyhart includes Officer Yung in the list of Officers that allegedly failed to intervene, but there is no evidence that Officer Yung interacted with Mr. Averyhart during the incident. (See ECF #41, pp. 29-31; ECF #18-3).

*County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004). Therefore, the City of Shaker Heights cannot be found liable unless Mr. Averyhart can establish that an "officially executed policy or the toleration of a custom" within the City deprived Mr. Averyhart of a constitutional right. *Monell*, 436 U.S. at 691.

This Court has already established that no constitutional violation occurred. Furthermore, there is no evidence to support the elements necessary to show that an illegal official policy or custom existed within the police department of Shaker Heights at the time of the incident. For these reasons, the City of Shaker Heights is entitled to judgment as a matter of law regarding Count IV.

        D.      <u>State Law Claims Against Officers - Counts VI-VIII</u>

The Defendants argue that the Officers are entitled to statutory immunity with regard to the Plaintiff's state claims of assault and battery, false arrest/wrongful detention and intentional infliction of emotional distress, as R.C. Section 2744.03(A)(6) "immunizes municipal employees from tort actions arising from their official duties unless they acted outside the scope of their official responsibilities; behaved with malicious purpose, in bad faith, wantonly, or recklessly; or are subject to liability by statute." (ECF #18-1, p. 12). This Court agrees.

Revised Code Chapter 2744 creates a presumption of immunity, which may only be overcome by demonstrating that one of the exceptions to immunity listed in R.C. Section 2744.03(A)(6)(a)-(c) applies. *See, e.g., Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (Ohio App. 1st Dist. 1995)(citation omitted). The first exception is not relevant herein, as Mr. Averyhart did not allege that the acts of the named Defendants were outside the scope of their employment or official responsibilities. *See, e.g., Carmichael v. City of Cleveland*, 571 Fed.Appx.

426, 437 (6th Cir. 2014). Nor is the third exception relevant, as Mr. Averyhart does not allege the Officers are liable under any other section of the Ohio Revised Code.

Mr. Averyhart does allege that the Officers actions were "intentional, willful, wanton, malicious"and reckless . (See ECF #11, ¶¶ 114-119). Ohio courts define "malice" as "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook,* 103 Ohio App.3d at 90. With regard to wanton or reckless conduct, the Ohio Supreme Court has found that "the standard for showing wanton misconduct is, however, high" and that "wanton misconduct was the failure to exercise any care whatsoever." *Fabrey v. McDonald Village Police Dep't,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (Ohio 1994)(parallel citations omitted).

As already established herein, the Officers' actions in this matter were in response to a radio dispatch indicating "shots fired." No reasonable jury could find that the Officers acted maliciously or in a wanton or reckless manner when they restrained Mr. Averyhart in order to secure the immediate area of the alleged shooting incident. Therefore, under the provisions in Revised Code Chapter 2744, the Officers are immune from liability for the state law claims against them and entitled to judgment as a matter of law on Counts VI-VIII.

III. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment (ECF #18) is GRANTED as to all Defendants. Mr. Averyhart's Motion for Partial Summary Judgment (ECF #42) hereby rendered MOOT. This case is, hereby, dismissed with prejudice in favor of Defendants.

IT IS SO ORDERED.

>/s/ Donald C. Nugent
> DONALD C. NUGENT
> United States District Judge

DATED: August 28, 2017